UNITED STATES, PLAINTIFF *v.* ROTEK, INC., DEFENDANT

Court No: 97–08–01311

(Dated June 9, 1998)

*Frank W. Hunger*, Assistant Attorney General, *David M. Cohen*, Director, *A. David Lafer*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Lucius B. Lau), Lars-Erik A. Hjelm*, Assistant Chief Counsel (Baltimore), United States Customs Service, of counsel, for plaintiff.

*Hogan & Hartson, L.L.P., (Lewis E. Leibowitz, Timothy C. Stanceu*, and *Scott M. Deutchman)* for defendant.

## OPINION

RESTANI, *Judge:* This action is before the court on defendant Rotek Inc.'s motion to dismiss for lack of jurisdiction and failure to state a claim pursuant to USCIT Rules 12(b)(1) and 12(b)(5) respectively. Specifically, defendant, an importer of ball bearing slewing rings, slewing bearings, and turntable bearings or slewing rings for bearing production, argues that the court lacks subject matter jurisdiction over its 19 U.S.C. § 1592 (1994) claim against Rotek, because Customs failed to exhaust its administrative remedies and thereby denied defendant an adequate opportunity to be heard. Rotek also argues the complaint fails to state a claim upon which relief may be granted. Defendant's motion is denied.

## FACTUAL BACKGROUND

A. Pre-Penalty Notice

On March 14, 1997, Customs issued a Pre-Penalty Notice alleging that Rotek violated 19 U.S.C. §§ 1481, 1484 and 1592 (1994) by fraudu-

lently misdescribing and misclassifying 162 entries between April 24, 1991 and February 22, 1996. *Pre-Penalty Notice from Customs to Rotek* (Mar. 14, 1997), at Ex. A, 1, Def.'s App., Ex. 2, at 3 *("Pre-Penalty Notice")*. Customs further alleged that Rotek had misclassified 80 items imported between December 27, 1993 and February 16, 1996. *Id.* Customs noted that "[t]he continued misclassification of the subject commodities is material because it affected the liability for duty." *Id.* Customs listed its tentative determination as fraud, however,

> [i]nasmuch as the Government may plead in the alternative in any de novo proceeding before the Court of International Trade, Customs alternatively alleges that the violations in question occurred as a result of gross negligence or negligence.

*Id.*

Customs attached to the Pre-Penalty Notice an appraisal worksheet containing an entry-by-entry listing, including the date of entry, the entry number, the value of each entry, the duty paid, the manufacturer part number, the quantity of each entry, the duty rate, the duty due, the potential loss of duty for unliquidated entries, the actual loss of duty for liquidated entries, the liquidation date, and the description of the merchandise contained in the invoice. *Id.* at 3–13, Def.'s App., Ex. 2, at 5–15. Customs alleged $153,707.29 in potential revenue loss and $270,764.46 in actual losses, totaling $424,471.75. *Id.* at 4. The proposed monetary penalty was $3,395,774.00. *Id.*

Based upon the impending expiration of a previous one-year waiver of the statute of limitations,[1] Customs claimed that defendant could assert the statute of limitations defense for some of the entries as of April 24, 1997. *Id.* at 1. Pursuant to 19 C.F.R. §§ 162.77 and 162.78 (1997) which authorize Customs to shorten response times when less than one year remains before the statute of limitations can be raised as a defense, Customs required a written response within seven business days. Customs also stated that if it received a waiver of the statute of limitations within the 7 day period, Rotek would have thirty days to respond to the Pre-Penalty Notice. *Id.*

On March 24, 1997, defendant timely filed a response to the Pre-Penalty Notice objecting to Customs' allegations. *Response to Pre-Penalty Notice from Rotek to Customs* (Mar. 24, 1997), at 1, Def.'s App., Ex. 3.

## B. Penalty Notice

On April 25, 1997, Customs at the Port of Baltimore issued a Penalty Notice and Demand for Payment. *Penalty Notice from Customs to Rotek* (Apr. 25, 1997), at 1, Def.'s App., Ex. 4, at 1 ("Penalty Notice"). The Penalty Notice stated a claim for alleged violations of 19 U.S.C. §§ 1481, 1484 and 1592. *Id.* at 3. The first sentence of the Notice of Penalty and

---

[1] Defendant, at Customs' request, waived the statute of limitations for a period of one year, commencing on April 24, 1996. *Letter from Rotek to Customs* (Apr. 24, 1996), at 1, Def.'s App., Ex. 1.

Demand for Payment identifies a change from the Pre-Penalty Notice, stating:

> Noted on the attached EXHIBIT A is a *change in the information and facts set forth in our prepenalty notice* dated March 14, 1997. EXHIBIT A sets forth the entries, dates of entry, loss of revenue, description of merchandise, a statement of the laws or regulations violated, the material facts establishing the violation, and the tentative determination of culpability.

*Id.* (emphasis added).

The Penalty Notice alleged that "Rotek filed or caused to be filed 162 entries of 'bearings,' 'slewing rings,' and 'unfinished rings' at various ports between April 24, 1991 through February 22, 1996 which were *knowingly misdescribed* as 'conveyor turntables' or 'parts of conveyor systems.'" *Id.* at Ex. A, at 1, Def.'s App., Ex. 4, at 3 (emphasis added). The Penalty Notice claimed that "the description for the 'unfinished rings' and 'bearings' failed to comply with the special invoicing requirements of 19 CFR § 141.89. The misdescription was material in that it affected or had the potential to affect the classification of the imported merchandise and the liability for duty." *Id.* Of the 162 misdescribed entries, 41 were also alleged to be "knowingly misclassified subsequent to Rotek's receipt of written classification advice from Customs * * * resulting in an actual and potential loss of revenue." *Id.* Fifty eight entries (41 of which were identified above) were claimed to be "knowingly misclassified from April 14, 1995 through February 16, 1996." *Id.* Customs noted that:

> Rotek continued to file entries utilizing tariff classifications contrary to those it was instructed to use by Customs subsequent to its receipt of written classification advice from Customs via Customs Forms 29, which instructed Rotek to change the classifications from HTSUSA Number 8431.3900.10 to HTSUSA Number 8483.4090.00.

*Id.* The "continued misclassification" of the entries was material as it affected the liability for duty. *Id.* An appraisal worksheet attached to the Penalty Notice contains the facts of the alleged violations. *Id.* at Ex. A, at 3–14, Def.'s App., Ex. 4, at 5–16. Customs listed its tentative determination of culpability as gross negligence or alternatively, negligence. *Id.* at Ex. A, at 2, Def.'s App., Ex. 4, at 4.

The Penalty Notice alleged $83,177.47 in potential revenue loss and $7,918.06 in actual revenue loss, for a total of $91,095.53. *Id.* The proposed monetary penalty was $2,018,944.90. *Id.* Pursuant to 19 U.S.C. § 1592(d), Customs demanded "immediate payment of the actual loss of revenue." *Id.* The Penalty Notice stated that defendant could assert the statute of limitations as a defense against entries as of April 24, 1997 and, thus, required defendant to respond within seven business days. *Id.* at 1, Def.'s App., Ex. 4, at 1.

On May 6, 1997, counsel for the defendant submitted a Petition for Relief from Penalty to the Commissioner of Customs and the Fines, Pen-

alties and Forfeitures Office at the Port of Baltimore. *Petition for Relief from Rotek to Customs* (May 6, 1997), at 1, Def.'s App., Ex. 5.

C. Mitigation Decision

On May 27, 1997, Customs Headquarters notified Customs officials at the Port of Baltimore of its Mitigation Decision in response to defendant's Petition for Relief. *Mitigation Decision* (May 27, 1997), at 1, Def.'s App., Ex. 6, at 1. Defendant received a copy of the Mitigation Decision from Customs at the Port of Baltimore on May 30, 1997. *Id.* at 1.

After addressing the allegations contained in the Pre-Penalty, *id.* at 3–4, and Penalty Notices, *id.* at 4–5, as well as Rotek's respective responses to the Notices, *id.*, Customs concluded:

> that 133 entries filed during the period from July 2, 1992 through and including February 22, 1996, were misdescribed. Of those 133 entries, we also find that 41 entries filed during the period from April 14, 1995 through and including February 22, 1996, were also misclassified. Finally, we find that 17 entries filed during the period from April 18, 1995 through and including February 16, 1996, were misclassified only.

>     \*        \*        \*        \*        \*        \*

> The maximum penalty provided for by 19 U.S.C. section 1592 for findings of negligence is the lesser of the domestic value of the merchandise, or two times the lawful duties of which the United States is or may be deprived. 19 U.S.C. § 1592(c)(3). * * * Accordingly, we conclude that the penalty should be reduced to an amount equal to $643,303.14 which represents two times the loss of revenue (potential loss of revenue $131,983.43; actual loss of revenue $189,668.14), provided that petitioner tenders the actual loss of revenue, in the amount of $189,668.14.

*Id.* at 10–11, Def.'s App., Ex. 6, at 11–12.

Customs then discussed the procedures for the filing of a supplemental petition:

> The statute of limitations was available as a defense on April 25, 1997, and the petitioner has indicated its unwillingness to give a waiver in this case. Petitioner has the *right to file a supplemental petition* challenging any findings in this decision. You should therefore provide *seven business days for the payment of this penalty. If your office does not receive payment within this time, you should immediately forward the case to the Office of the Assistant Chief Counsel for referral to the Department of Justice. If a supplemental petition is filed before such referral, we will consider the supplemental, but the referral to the Department of Justice will continue.* If a supplemental petition is filed after the referral, please forward it to the Department of Justice through the Assistant Chief Counsel as provided for in 19 C.F.R. § 174.24. You may authorize extensions of this period only if the petitioner provides an acceptable waiver of the statute of limitations.

*Id.* at 11, Def.'s App., Ex. 6, at 12 (emphasis added).

Counsel for defendant, challenging the seven-day time limit as "draconian," requested an extension to file a supplemental petition. *Letter from Rotek to Customs* (June 2, 1997), at 2, Def.'s App., Ex. 7. Customs responded that defendant's June 2, 1997, letter "contains misstatements" and that:

> there is no shortened time frame for [Rotek] to file a supplemental decision, and as such, has the full 30 day period to file the supplemental petition; and if payment is not received within the seven day period, the case will be referred to the Department of Justice.

*Letter from Customs to Rotek* (June 2, 1997), at 1, Def.'s App., Ex. 8.

On June 5, 1997, Customs referred this case to the Department of Justice.[2] On June 10, 1997, seven business days from receipt of the Mitigation Decision, defendant submitted the supplemental petition for consideration by both the Secretary of the Treasury and the Customs Service. *Supplemental Petition for Relief from Penalty and Payment of Duty* (June 10, 1997), at 1, Def.'s App., Ex. 9 *("Supplemental Petition")*. Defendant was notified on July 7, 1997, that the case had been referred to the Justice Department for a collection action before this court. *Letter from Justice to Rotek* (July 7, 1997), at 1, Def.'s App., Ex. 10. Defendant did not receive a response to the Supplemental Petition.

D. Complaint

This action was filed on August 8, 1997. The Complaint states that "[t]his is an action to enforce a civil penalty for violations of 19 U.S.C. § 1592 and to recover duties pursuant to 19 U.S.C. § 1592(d)," and identifies 132 entries imported between July 13, 1992, and February 22, 1996.[3] *Compl.*, at ¶¶ 1, 4. The 132 items are documented in Exhibit A, appended to the Complaint. *Id.* at Ex. A. The government alleged that Rotek made material false statements and omissions because the entry documentation failed to provide a detailed description of the merchandise, including each item's known commercial name, within the meaning of 19 U.S.C. § 1481(a)(3). *Id.* at ¶ 5. These false statements "had the potential to deprive the United States of duties due upon the merchandise covered by the entry numbers listed in Exhibit A." *Id.* at ¶6. The government alleged in its Complaint that as a result of Rotek's negligence, Rotek was

> liable to the United States pursuant to 19 U.S.C. § 1592(c)(3) for a civil penalty in the amount of $546,258.16, which represents two times the lawful duties, taxes, and fees of which the United States is or may be deprived.

*Id.* at ¶ 9. The government also claimed that Rotek was liable for "duties pursuant to 19 U.S.C. § 1592(d) in the amount of $163,080.95." *Id.* at ¶ 12.

---

[2] June 5, 1997 was seven business days from the issuance of the Mitigation Decision to Customs Baltimore.

[3] Unlike the Mitigation Decision that included 133 entries, the Complaint included only 132 entries. This is because while the Mitigation Decision covered the period from July 2, 1992 through February 22, 1996, the Complaint covered a shorter period, from July 13, 1992 through February 22, 1996.

DISCUSSION

I.

In its motion to dismiss,[4] Rotek argues that this court lacks subject matter jurisdiction because Customs failed to exhaust its administrative remedies, depriving Rotek of its regulatory and statutory rights to notice and an opportunity to be heard. The court disagrees.

As an initial matter, this court has jurisdiction over customs fraud cases. 28 U.S.C. § 1582 (1994); *see United States v. Accurate Mould Co., Ltd.*, 4 CIT 81, 82, 546 F. Supp. 567, 568 (1982) ("In sum, Congress in enacting the Customs Court Act of 1980 provided this court, in plain and unambiguous language, with exclusive jurisdiction over all [19 U.S.C. § 1592] actions commenced on or after January 30, 1981."). Moreover, section 2637(d) of Title 28 states that "[i]n any civil action not specified in this section, the Court of International Trade shall, *where appropriate*, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1994) (emphasis added).

Because the present action arises under 19 U.S.C. § 1592 and is not specified in 28 U.S.C. § 2637(a)–(c), this court has discretion whether to waive the exhaustion requirement. *See* 19 U.S.C. § 2637(d); *United States v. Priority Products, Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986) ("Exhaustion of administrative remedies is not strictly speaking a jurisdictional requirement and hence the court may waive that requirement and reach the merits of the complaint."). Thus, the court must focus not on a rigid application of the agency's regulations, but rather, on whether the defendant was afforded sufficient opportunity to be heard so as to justify the court's retention of jurisdiction without further exhaustion of the administrative remedies. *See United States v. Obron Atl. Corp.*, 862 F. Supp. 378, 382 (Ct. Int'l Trade 1994) (finding jurisdiction where Customs improperly imposed 7 day response period because defendant was not deprived of opportunity to be heard as it submitted material and made oral presentations following both pre-penalty and penalty notices); *United States v. Modes, Inc.*, 13 CIT 780, 785, 723 F. Supp. 811, 815 (1989) (finding jurisdiction where Customs did not respond to supplemental petition because defendant was not deprived of opportunity to be heard as it made an oral presentation and was provided with a written determination stating findings of fact and conclusions of law supporting decision to mitigate); *but see United States v. Chow*, 17 CIT 1372, 1376, 841 F. Supp. 1286, 1289–90 (1993) (finding court lacked jurisdiction because Customs failed to exhaust administrative remedies and

---

[4] Plaintiff urges this court to treat defendant's motion as one for summary judgment. USCIT R. 12(b) provides, in relevant part:

> If, on a motion asserting the defense numbered (5) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

USCIT R. 12(b).

As there has been no opportunity for discovery and various facts related to the merits of this case appear in dispute, the court deems it inappropriate to treat the motion to dismiss as one for summary judgment. The facts set forth here are essentially agreed to and may be considered in connection with the motion to dismiss.

violated defendant's constitutional right to due process when Customs imposed improper 7 day response time and penalty notice lacked specificity).[5]

Rotek alleges that Customs deprived it of its statutory and regulatory rights to due process by: (1) changing the allegations and legal theories throughout the administrative process; (2) subjecting Rotek to seven day response periods even though the statute of limitations on the "valid" claims would not run for more than one year; and (3) referring the case to the Justice Department prematurely and not responding to Rotek's supplemental petition. Each of these claims are addressed below.

A. Changing allegations and legal theories

Section 1592 is the procedure by which Customs reviews alleged civil violations of U.S. customs laws. 19 U.S.C. § 1592. This procedure includes a mandatory Pre-Penalty Notice, 19 U.S.C. § 1592(b)(1), followed by a Penalty Notice upon Customs' determination that a violation has occurred, 19 U.S.C. § 1592(b)(2). Regarding the Penalty Notice, the statute provides that when Customs does establish that a violation occurred, "it shall issue a written penalty claim to such person. The written penalty claim shall specify all changes in the information provided [in the Pre-Penalty Notice]." *Id.* Section 1592(b)(2) further provides that the importer will have an opportunity

> to make representations, both oral and written, seeking remission or mitigation of the monetary penalty. At the conclusion of any proceeding under such section 1618 [of this title], the Customs Service shall provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based.

*Id.*

Defendant argues that the Pre-Penalty Notice, Penalty Notice, Mitigation Decision and Complaint allege shifting, inconsistent claims regarding the pre-April 14, 1995 entries, depriving Rotek of its opportunity to be heard because each of Rotek's submissions required responding to new allegations and legal theories. Customs initially alleged in the Pre-Penalty Notice that the merchandise on all the subject entries generally was misdescribed *and* misclassified, and further alleged a revenue-loss violation of § 1592. *Pre-Penalty Notice*, at Ex. A, at 1, Def.'s App., Ex. 2, at 3. Rotek argues that the first change occurred from the Pre-Penalty Notice to the Penalty Notice, where Customs abandoned the revenue loss claim with respect to the pre-April 14, 1995 entries and instead alleged a non-revenue loss violation based on misdescription. Misclassification in addition to misdescription was not alle-

---

[5] *Chow* rests upon alternative grounds, either one of which is sufficient. *Id.* The constitutional basis, however, is subject to debate. Where trial *de novo* is available before penalties are extracted, it is unlikely the constitutional due process rights are involved. Statutory and regulatory rights do not always give rise to property rights worthy of constitutional due process protection. *See NEC Corp. v. United States Dep't of Commerce*, 978 F. Supp. 314, 325–26 (Ct. Int'l Trade 1997).

510

ged. *Penalty Notice*, at Ex. A, at 1, Def.'s App., Ex. 4.[6] Rotek argues that the second change occurred from the Penalty Notice to the Mitigation Decision and the Complaint. Both allege revenue loss violations for all misdescribed entries. *Mitigation Decision*, at 10–11, Def.'s App., Ex. 6.

The court finds defendant's argument as to the change in allegations between the Penalty Notice and Pre-Penalty Notice meritless. Section 1592 itself provides that the Penalty Notice "shall specify all changes in the information provided" in the Pre-Penalty Notice, including the amount of penalty. 19 U.S.C. § 1592(b)(2). This language implies that changes are permissible as long as defendant has notice. The statute, therefore, contains no explicit prohibition against Customs changing a penalty based on revenue loss to non-revenue loss.

Moreover, although defendant argues that the allegations changed, it does not contest notice of the allegations and rightfully so. The record indicates that Rotek was on notice of the allegations. The Penalty Notice itself states "Noted on the attached EXHIBIT A is a *change in the information and facts* set forth in our prepenalty notice dated March 14, 1997." *Penalty Notice*, at 3, Def.'s App., Ex. 4 (emphasis added). Indeed, in its Petition for Relief, defendant articulates the change from the Pre-Penalty to the Penalty Notice, demonstrating awareness of any "new" allegations contained in the Penalty Notice. *Petition for Relief*, at 14–15, Def.'s App., Ex. 5.[7] Finally, defendant's argument that Customs changed the revenue/non-revenue loss classification from the Pre-Penalty Notice to the Penalty Notice without sufficient notification fails to consider that Customs' central claim, a violation of § 1592 through at least misdescription for specific entry items, remained consistent.

Rotek also argues that the Complaint contained allegations found only in the Mitigation Decision and not found in the Penalty Notice. Though defendant contends it did not receive adequate notice due to changes in the revenue/non-revenue loss classifications, and that such classification was a material fact required to be revealed under § 1592(b)(1)(A)(iv), the change did not prevent defendant from responding to the allegations of a § 1592 violation based on either fraud or negligence. The 132 items included in the Complaint were the exact items described in the Penalty Notice and the Mitigation Decision. There was, therefore, no question as to the exact identity of the entries at issue and the allegation that misdescription of the relevant entries may have violated § 1592. Thus, defendant was able to argue compliance with the statute notwithstanding the fact that the entries were treated differently with respect to the penalty calculation.

Moreover, Rotek's detailed factual and legal arguments contained in its Response to the Pre-Penalty Notice, Petition for Relief, and Supplemental Petition demonstrate that Rotek was on notice of the potential

---

[6] The reason for this change is unclear. Because this case does not involve restricted merchandise, marking or country of origin issues, material misdescription must relate in some way to misclassification, either actual misclassification or anticipated misclassification based on the misdescription.

[7] The allegations, however, might be better described as simply *refinements* rather than "new" allegations.

claims and did have adequate opportunity to participate in the administrative proceedings. Rotek also had the opportunity to make oral presentations and meet with Customs officials on a number of occasions. *Mitigation Decision*, at 1, 4, Def.'s App., Ex. 6. Because Rotek fails to articulate how its multiple responses to the alleged § 1592 violation would have changed if it had known of the revenue loss allegation or how it was harmed, the court finds that further exhaustion of administrative remedies is not required.

B. Seven day response periods.

During the Pre-Penalty, Penalty and Mitigation phases, when less than one year remains before the statute of limitations can be raised as a defense, Customs is entitled to shorten response times for alleged violations of § 1592 from thirty to seven days. *See* 19 C.F.R. § 162.77–.78 (pre-penalty); 19 C.F.R. § 171.12 (petition for mitigation response time shortened if 180 days remaining). Here, the statute of limitations became available as a defense on April 25, 1997.

Defendant does not contest the calculation of the statute of limitations nor that a seven day response time in general was proper. Instead, defendant argues that the procedural irregularities in both the Pre-Penalty Notice and the Penalty Notice invalidated the claims against the earlier entries, leaving only entries where the statute of limitations defense would not be available within a year. Thus, without the invalid entries, Rotek should have received the full response time and was deprived of its right to be heard by receiving only 7 days.

Because this court has determined that the procedural errors did not invalidate Customs' claims as to the pre-April 14, 1995 entries, this argument fails.

C. Defendant's Supplemental Petition claims

Rotek contends that because of Customs' premature referral on June 5, 1997,[8] Customs failed to rule on Rotek's supplemental petition, filed on June 10, and thus denied Rotek its only opportunity to respond to the new allegations in the Mitigation Decision.

The regulations governing Customs' conduct are clear. A supplemental petition may be filed within either 30 days from the date of notice to the petitioner of the decision if no effective period is prescribed in the decision or the time prescribed in the decision. 19 C.F.R. § 171.33(a)(2) (1997).[9] A shortened response period does not deprive a defendant of its statutory right to a "reasonable opportunity" to be heard. *United States v. Ross*, 574 F. Supp. 1067, 1070 (Ct. Int'l Trade 1983) (seven day re-

---

[8] Customs, in its Mitigation Decision, provided defendant with seven days to pay the penalty. *Mitigation Decision*, at 1, Def.'s App., Ex. 6. The Mitigation Decision, however, has two dates. Customs Headquarters sent the Mitigation Decision, date stamped May 27, to Customs Baltimore, which received it on May 29, 1997. *Id.* Customs Baltimore notified defendant by letter date stamped May 30, 1997. *Id.* The June 5, 1997 referral, therefore, occurred four business days after May 30, 1997, but seven business days after Customs Headquarters issued the Mitigation Decision. Any argument that the referral was not premature, based on the date Customs Baltimore was notified of the Mitigation Decision rather than the date defendant was notified, is unpersuasive as the mandatory minimum of 7 days to respond is for the benefit of the defendant, not Customs.

[9] In this case, the statute of limitations was already available as a defense to at least some entries.

sponse time to file petition for mitigation is not an unreasonable burden). No action, however, shall be taken on a petition if the case has been referred to the Department of Justice to institute legal proceedings. 19 C.F.R. § 171.24 (1997).

If Rotek's argument was limited to the lack of response to its Supplemental Petition, the answer would be clear. The case had been referred to Justice and thus under the regulations, no action on the petition was taken. Here, however, the referral that prevented formal Customs action on Rotek's Supplemental Petition, was premature. According to the regulations, the time to respond is defined as "prescribed in the decision." Here, the decision stated that if Customs did not receive payment of the penalty within seven days, it was obligated to forward the case to Justice. If the petition was filed before the referral, Customs would consider the petition, but the referral to Justice would continue. Thus, the decision could be interpreted as granting defendant a window of seven days in which to respond to the Mitigation Decision and still have the supplemental petition reviewed. By referring the case to Justice prior to the seven days, Customs did not explicitly shorten the response time as defendant still had seven days. Rather, Customs created a situation that requires the court to evaluate whether the early referral harmed the defendant by rendering its opportunity to be heard by the agency a nullity.

In a case where the allegations against the defendant had remained the same throughout the administrative process, the answer also would be clear. The defendant would not have been deprived of appropriate process because the defendant had opportunities to respond at each stage of the proceedings. Here, however, Rotek argues that the Mitigation Decision changed the allegations and resulted in new findings of fact and conclusions of law. The Supplemental Petition was the only opportunity to respond to the new allegations and it was not considered by Customs due to the early referral. Whether this error was harmless depends on: (1) what exactly changed from the Penalty to the Mitigation stage; and (2) why Rotek's other responses were insufficient to address the "new allegations."

From a broad perspective, the allegations appear the same throughout the process. Customs alleged that the same entries into the same port violated § 1592 through misdescription. Rotek's response, again generally, to this allegation at any stage of the proceeding would be that the entries either were not misdescribed or that it was not culpable. In fact, Rotek admits that it presented all relevant factual data to Customs in earlier submissions. Its response to the Mitigation Decision presented legal arguments, similar to the arguments made here, which do not relate to the particular expertise of Customs and which could easily be considered by the Justice Department as well as Customs. Under the facts of this case the procedural error appears harmless.

## II.

"On a motion to dismiss for failure to state a claim pursuant to USCIT Rule 12(b)(5), the court assumes 'all well-pled factual allegations are true' and construes 'all reasonable inferences in favor of the nonmovant' in resolving whether the complaint sets forth facts sufficient to support a claim." *Kemet Elects. Corp. v. Barshefsky,* 976 F. Supp. 1012, 1027 (Ct. Int'l Trade 1997) (internal citations omitted). The basis of the court's determination is limited to "the facts stated on the face of the complaint, documents appended to the complaint, and documents incorporated in the complaint by reference." *Id.*

Rotek argues that the Complaint fails to state a claim upon which relief may be granted because it is based on the Mitigation Decision, instead of the Penalty Notice. This argument is unpersuasive. Both the Complaint and the Penalty Notice allege that the same 132 entries were entered misdescribed.

Defendant argues that an alternative ground for dismissal lies in the failure of the Complaint to allege an actionable violation of § 1592 because it insufficiently alleges causation between the alleged misdescription and the loss of revenue. The court is unpersuaded.

The elements of a § 1592 violation require that no person (1) "by fraud, gross negligence, or negligence" (2) "may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States" (3) "by means of any document or electronically transmitted data or information, written or oral statement, or act which is material and false" or "any omission which is material." 19 U.S.C. § 1592(a)(1). Here, the Complaint alleges that Rotek negligently made 132 entries of merchandise at various ports by means of false statements and omissions. This is all that is required to state a claim pursuant to § 1592. Moreover, the Complaint alleges the amount of revenue loss. We must assume this factual allegation is true, leaving for trial the issue of whether the government can prove the revenue loss.